IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

DONNA SEXTON,                          *

    Plaintiff,                        *

vs.                                    *

GEORGIA DEPARTMENT OF                  *       CASE NO. 4:17-CV-45 (CDL)
CORRECTIONS, SHELAY SMITH, *in*
*her individual capacity*, and         *
JOHN DOES 1-3,                         *

    Defendants.                       *

                                        *

O R D E R

    Donna Sexton is the mother of an inmate at Rutledge State Prison. She claims that she was treated with disrespect, assaulted, and eventually arrested for no legitimate reason by a correctional officer while visiting her son at the prison. Sexton sued the correctional officer, the Georgia Department of Corrections ("GDC"), and three John Doe Defendants in state court. She alleged that her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution had been violated, and she asserted those claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. She also asserted claims under Georgia law. Defendants removed the action to this Court and filed a motion for judgment on the pleadings (ECF No. 4). In that motion, Defendants maintain that they are entitled to immunity

and that Sexton's allegations do not state a plausible claim for relief.

As explained in the remainder of this Order, Sexton alleges sufficient facts for some of her claims to survive Defendants' motion for judgment on the pleadings; for others, she does not. Specifically, Defendants' motion for judgment on the pleadings is denied as to Sexton's § 1983 claims against correctional officer Shelay Smith, in her individual capacity, for false arrest and excessive force in violation of the Fourth Amendment and for retaliation in violation of the First Amendment. Defendants' motion for judgment on the pleadings is granted as to all of Sexton's other claims.

## JUDGMENT ON THE PLEADINGS STANDARD

Motions for judgment on the pleadings and motions to dismiss for failure to state a claim require the same analysis. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). Thus, to survive a motion for judgment on the pleadings under Rule 12(c), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S.

at 555.   In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.   *Id.* at 556. The Federal Rules do "not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

FACTUAL ALLEGATIONS

To decide Defendants' motion for judgment on the pleadings, the Court is permitted to consider certain parts of the exhibits that Sexton attached to her complaint, including parts of the GDC's incident report and supplemental incident report relating to the incident giving rise to this action.   *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (explaining that, generally, a court may consider the contents of police reports attached to a complaint when ruling on a motion to dismiss but that a court may not consider such reports when they are alleged to be false).   The reports contain sworn statements given by Sexton and the other correctional officers involved.   *See* Compl. Ex. B, GDC Incident Report, ECF No. 1-1 at 32–33; Compl. Ex. B, GDC Suppl. Incident Report, ECF No. 1-1 at 34–37.   Because Sexton alleges that the officers made false statements regarding the subject matter contained in the reports, the Court does not consider those statements in deciding the present motion.   In

essence, the Court simply treats Sexton's statements that are recorded in the reports as if they are supplemental allegations to her complaint, and thus, they are deemed true for purposes of the pending motion.   Sexton's complaint and such supplemental allegations in the exhibits to her complaint establish the following.

Sexton went to visit her son, who is an inmate at Rutledge State Prison.   Compl. ¶¶ 16 & 29, ECF No. 1-1.   Once Sexton entered the visitation area, Defendant Smith told Sexton to sit at the table directly in front of her.   GDC Incident Report-Donna Sexton Statement Under Oath, ECF No. 1-1 at 33.   Referring to her son, Sexton asked Smith, "Want to keep your eye on him? You got that right."   *Id*.   Sexton then went to the vending machine and purchased two bags of potato chips, among other items.   When she returned to her seat, another visitor told her that the prison's new policy requires visitors to remove snacks from their retail packaging, throw the packaging away, and place the snacks on a plate.   Sexton stated aloud, "Okay—would have been nice to have been told that."   *Id*.   Smith responded that she would have gotten around to telling Sexton the rule.   Sexton opened one bag of chips, and then Smith told her to open the other.   Sexton then asked whether she could wait until her son arrived, at which time Smith threatened Sexton that she would

not get to see her son at all if she did not open the bag.
Sexton complied and eventually began visiting with her son.

Later, Sexton purchased two more bags of snacks from the
vending machine.  GDC Report-Addition to Donna Sexton Statement
Under Oath, ECF No. 1-1 at 35.  At some point after Sexton's son
opened the snacks and poured them on the plate, the wrappers
fell to the ground.  Sexton's son picked up the wrappers and
gave them to his mother.  At that time, Smith approached Sexton
and told her that she did not appreciate her attitude and told
her to throw the wrappers away.  Sexton complied.

On her way back from the trash can, Sexton noticed that
other visitors not only had trash on their tables but also had
unopened snacks from the vending machine.  She then "said
something to [Smith] about it."  *Id*.  Smith responded by telling
Sexton that her visit was over, to which Sexton responded, "I'm
not leaving."  *Id*.  As prison staff escorted her son out of the
visitation area, Sexton stood to leave and headed for the door,
accidentally knocking her plate of snacks onto the table in the
process.  Smith pushed Sexton into the wall, causing her to fall
on the ground.  Sexton claims that Smith used her boots and
hands to hold her down on the ground, scratched her, and hit her
in the face. During the tussle, Smith tauntingly asked Sexton,
"Where you gonna go? Where you gonna go?"  *Id*.

Smith detained Sexton and refused to let her leave the facility.  Compl. ¶ 31.  The struggle broke Sexton's dentures and caused her other physical injuries, but Smith failed to provide Sexton with medical care.  Thereafter, Smith made false allegations about Sexton's conduct in order to have Sexton arrested and charged with crimes.  *Id.* ¶¶ 34 & 35.  The charges were resolved in Sexton's favor.  *Id.* ¶ 36.

The entire episode between Sexton and Smith was caught on video.  After leaving the prison grounds, Sexton sent multiple formal requests to the GDC under Georgia's Open Records Act ("ORA"), O.C.G.A. § 50-18-70 *et seq.*, to obtain a copy of that video footage and other materials.  The GDC never provided the video, claiming that the material Sexton requested is exempt from the ORA because it would reveal the camera's field of vision and compromise prison security.  Compl. ¶¶ 7-10.

DISCUSSION

## I.  Claims Against Smith

Sexton asserts claims under federal and state law against Smith in her individual capacity.  Specifically, she alleges federal claims under § 1983 against Smith for violations of her First, Fourth, and Fourteenth Amendment rights; and she brings state-law claims arising under the Georgia Tort Claims Act

("GTCA"), O.C.G.A. § 50-21-20 *et seq.*, the Georgia Constitution, and Smith's employment contract with the GDC.[1]

A.   Section 1983 Claims

Defendants argue that Sexton has not alleged sufficient facts to plausibly state any claims for violations of her federal constitutional rights and, even if she did, that Smith is entitled to qualified immunity.  "A public official who asserts a defense of qualified immunity must establish that [s]he was 'engaged in a "discretionary function" when [s]he performed the acts of which the plaintiff complains.'"  *Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). An officer who was engaged in a discretionary function is entitled to dismissal before the commencement of discovery "[u]nless the plaintiff's allegations state a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Therefore, the first question is whether Sexton's allegations reveal that Smith was engaged in a discretionary

---

[1] It appears from Sexton's complaint that she only asserts the federal and state constitutional claims against Smith individually. *See* Compl. 8 (asserting "INDIVIDUAL CLAIMS AGAINST DEFENDANT SMITH").  But she consistently argues in her brief about "Defendants" in relation to these claims.  The Court construes "Defendants" in Sexton's brief to mean Smith and the three John Doe Defendants Sexton also named in her complaint.  "[F]ictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam).  And Sexton's allegations are not sufficient to take advantage of the exception to that rule. *See id.*  Thus, the Court grants Defendants' motion for judgment on the pleadings as to Sexton's claims against the John Doe Defendants.

function during her interaction with Sexton.  If so, the question becomes whether Sexton's factual allegations state a plausible claim for the violation of her clearly established rights under the United States Constitution.

Sexton disputes that Smith was engaged in a discretionary function because she alleged that Smith's conduct was governed by the prison's established rules and procedures.  The Eleventh Circuit has, however, "abandoned this 'discretionary function/ministerial task' dichotomy." *Holloman*, 370 F.3d at 1265.  The proper question is whether Smith "was (a) performing a legitimate job related function . . . (b) through means that were within [her] power to utilize." *Id.*  The Court finds that the pleadings clearly establish that Smith was engaged in a discretionary function when she interacted with Sexton.  *See* discussion *infra* Section I.B. at p.17 and accompanying citations (explaining that Smith was discharging duties within the scope of her employment through authorized means).  Thus, Smith is entitled to qualified immunity unless Sexton's allegations plausibly show that Smith violated her clearly established rights.

### 1.   Fourth Amendment Claims

The Court finds that Sexton has stated plausible Fourth Amendment claims for false arrest and excessive force but not malicious prosecution.  An officer is entitled to qualified

immunity so long as she had "arguable probable cause" for the seizure at issue. *Morris v. Town of Lexington*, 748 F.3d 1316, 1324 (11th Cir. 2014). Arguable probable cause exists when a reasonable officer "in the same circumstance and possessing the same knowledge as the Defendant[] could have believed that probable cause existed." *Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)). Although Smith contends that she is entitled to qualified immunity, she has not articulated any offense for which a reasonable officer could have believed arguable probable cause existed to seize Sexton. *See Windham v. City of Fairhope*, No. 13-0025-WS-N, 2013 WL 1679355, at *5 (S.D. Ala. Apr. 16, 2013) (placing burden on defendants to articulate offense for which probable cause existed where plaintiff alleged seizure was without probable cause but did not proffer basis for seizure). And Sexton's allegations fail to immediately show that she engaged in any conduct that violated a statute or ordinance under Georgia law.

Sexton alleged that she did nothing more than say "something" to Smith about how other visitors were permitted to have trash and unopened food on their tables while she was not, which prompted Smith to terminate her visit. Sexton concedes that, at that point, she told Smith that she was not leaving. But, Sexton also alleges that she stood up and walked toward the door to leave when the other correctional officer escorted her

son out of the visitation area.  Then, Smith seized Sexton by forcibly pushing her into the wall and onto the ground.  The Court is aware that it is "unlawful for any person to loaf, linger, or stand around where inmates are . . . kept after having been ordered . . . to desist therefrom."  O.C.G.A. § 42-5-17.  There is no allegation, however, that Smith told Sexton to leave the visitation area or that Sexton continued to loaf, linger, or stand in the visitation area after being told to leave.  Instead, Sexton expressed her opposition to Smith ending her visit but nonetheless began to leave once her visit was clearly over.  Nor could any reasonable officer in Smith's position have believed that Sexton committed disorderly conduct, which requires, at a minimum,  the use of "fighting words" or the use of vulgar language to a person under the age of fourteen.  O.C.G.A. § 16-11-39(a)(1-4).  No allegations in Sexton's complaint suggest that Sexton used fighting words or vulgar language within earshot of a person under the age of fourteen.

When Smith arrested Sexton, Eleventh Circuit precedent "clearly established . . . that an arrest made without arguable probable cause violates the Fourth Amendment."  *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007).  Accepting Sexton's allegations as true, Smith arrested her without probable cause.  And Smith has not articulated a single offense

for which a reasonable officer could have believed that she had arguable probable cause to arrest Sexton under the circumstances alleged in Sexton's complaint.   Consequently, the Court finds that Sexton has sufficiently alleged that Smith arrested her without arguable probable cause.   Thus, Smith is not entitled to qualified immunity on Sexton's Fourth Amendment claim arising from that arrest and detention.

Furthermore, "[i]n the absence of probable cause, [Smith] was not justified in using any force against [Sexton]."   *Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008) (reversing finding of qualified immunity as to plaintiff's excessive force claims where officers used force in carrying out arrest for which no probable cause existed).   Even though no cause existed, Smith pushed Sexton into the wall and onto the ground, placed her boot and hands on Sexton, scratched Sexton, and hit her in the face.   No reasonable officer could have believed that Smith's use of force against Sexton was lawful under these circumstances.   *See Brown v. City of Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010) (explaining that an officer is entitled to qualified immunity where a reasonable officer could have believed that the officer did not use excessive force).   Accordingly, the Court finds that Sexton has also stated a plausible claim under the Fourth Amendment for Smith's use of

excessive force and that Smith is not entitled to qualified immunity.[2]

However, the Court finds that Sexton has not stated a plausible Fourth Amendment claim against Smith for malicious prosecution. For such a claim, Smith must allege that "she was seized in relation to the prosecution, in violation of her constitutional rights." *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004). Here, Sexton alleges that she was seized without a warrant prior to any charges being filed. And "[i]n the case of a warrantless arrest . . . [the] arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment." *Id.* (citation omitted). Thus, Defendants' motion for judgment on the pleadings is granted as to this Fourth Amendment claim for malicious prosecution but denied as to Sexton's Fourth Amendment claims for false arrest and excessive force.

### 2.   *First Amendment Claim*

The Court also finds that Sexton has stated a First Amendment retaliation claim. To state a valid claim for

---

[2]   The Court recognizes that Sexton bears the burden of providing a Supreme Court, Eleventh Circuit, or Georgia Supreme Court case that is materially similar to this one or convincing the Court that this is a case of obvious clarity for the Court to find that Smith violated her clearly established rights. Taking Sexton's allegations as true, the Court finds that this is a case of obvious clarity because the allegations are essentially that Smith seized Sexton for no apparent reason and used force in the process of effecting that plainly illegal seizure.

retaliation under the First Amendment, a plaintiff must allege facts showing (1) "that [her] speech or act was constitutionally protected;" (2) "that the defendant's retaliatory conduct adversely affected the protected speech;" and (3) "that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Sexton sufficiently alleges all three requirements.

Here, Sexton alleges that Smith arrested her for mentioning to Smith that Smith singled her out for violating the prison's rules regarding food and for telling Smith that she was not leaving the visitation area when Smith terminated her visit. Sexton's remarks are constitutionally protected speech. *See Carr v. Cadeau*, 658 F. App'x 485, 489 (11th Cir. 2016) (per curiam) ("The First Amendment very clearly protects '[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest.'" (quoting *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987))). In response to Sexton's speech, Smith terminated Sexton's meeting with her son and arrested her without probable cause. These retaliatory acts would be sufficient to "deter a person of ordinary firmness from exercising . . . her First Amendment rights." *Bennett*, 423 F.3d at 1252; *see id.* at 1254–55 (finding that local police officers' "prolonged and organized campaign" of following, pulling over,

citing, intimidating, or otherwise harassing the plaintiffs would deter people of ordinary firmness from exercising their rights and collecting cases in which actions less serious than Smith's satisfied the standard). Further, Sexton alleges that her statements subjectively motivated Smith to prematurely end Sexton's visit with her son and to arrest her. *See Smith v. Mosely*, 532 F.3d 1270, 1278 (11th Cir. 2008) (explaining that causal inquiry asks whether defendant was subjectively motivated by the speech). Thus, Sexton has stated a plausible claim for the violation of her First Amendment rights. Further, the Eleventh Circuit "has held since at least 1988 that it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1256 (quoting *Ga. Ass'n of Educators v. Gwinnett Cty. Sch. Dist.*, 856 F.2d 142, 145 (11th Cir. 1988)). Accordingly, the Court finds that Smith is not entitled to qualified immunity on this claim at this time. Thus, Defendants' motion for judgment on the pleadings is denied as to this claim.

### 3.   Fourteenth Amendment Claim

Sexton also asserts a claim against Smith under the Fourteenth Amendment based on Smith's alleged deliberate indifference to her serious medical needs. To state such a claim, "a plaintiff must [allege]: '(1) a serious medical need;

14

(2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.'" *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam) (second alteration in original) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)). Here, the Court finds that Sexton's factual allegations do not plausibly show that she suffered from a serious medical need and that Smith was deliberately indifferent to that need. Moreover, the factual allegations certainly do not demonstrate that Smith's response to Sexton's medical needs violated clearly established law. Therefore, she would be entitled to qualified immunity on this claim.

Sexton's pleadings only mention one specific injury: her broken dentures. In the Eleventh Circuit, "merely having . . . a definite need for dentures [does not] per se constitute[] a serious medical need in each case." *Farrow v. West*, 320 F.3d 1235, 1244 (11th Cir. 2003). The relevant question is whether the plaintiff's need is "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Id.* at 1243 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). All Sexton alleges is that her dentures were broken. She does not allege that she suffered cuts, bleeding, swollen gums, or sores in her mouth or that she was unable to eat or in continual pain as a result. *See id.* at 1244–45 (explaining how a plaintiff's

need for dentures could present a substantial risk of serious harm).  And she alleges no other facts that plausibly show that she was at a substantial risk of suffering *any* further harm due to her broken dentures, much less serious harm.  Further, Sexton does not allege facts showing that Smith knew that her dentures were broken or knew that Sexton's broken dentures posed a risk of further harm.  *See Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016) (per curiam) (setting forth deliberate indifference standard).  Thus, Sexton has failed to plausibly allege that Smith was deliberately indifferent to her serious medical needs, and she certainly has not alleged sufficient facts to overcome Smith's entitlement to qualified immunity on this claim.  Consequently, Defendants' motion for judgment on the pleadings is granted as to this claim.

> B.   State-law Tort & Constitutional Claims

In addition to her federal claims, Sexton asserts state-law tort claims under the GTCA and constitutional claims against Smith in her individual capacity.  These claims clearly fail.  "A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."  O.C.G.A. § 50-21-25(a).  Moreover, "[e]ven where the plaintiff alleges a state constitutional violation, if the 'underlying conduct complained of is tortious' and occurred within the scope of the state

employee's official duties, the employee is protected by official immunity under the GTCA." *Davis v. Standifer*, 621 S.E.2d 852, 855 (Ga. Ct. App. 2005) (quoting *Premo v. Ga. Ports Auth.*, 488 S.E.2d 106, 108 (Ga. Ct. App. 1997)).[3] Although there is no such allegation in her complaint, Sexton argues in her brief that Smith is not entitled to official immunity because she was acting outside of the scope of her official duties when she allegedly engaged in the harmful conduct. Sexton's factual allegations, however, support the opposite conclusion.

All of the harmful acts that Sexton alleges Smith committed occurred while Smith was discharging duties within the scope of her employment as a correctional officer. *See* Ga. Comp. R. & Regs. 125-3-4-.06 (providing that correctional officers shall monitor the visitation area and exclude visitors in certain circumstances); O.C.G.A. § 42-5-34 (providing that correctional officers have the power of arrest for certain offenses); *cf. Romano v. Ga. Dep't of Corr.*, 693 S.E.2d 521, 525 (Ga. Ct. App. 2010) (comparing administrative regulations and factual allegations to find that correctional officer was acting within scope of official duties and was thus entitled to official

---

[3] The Court acknowledges that the Georgia Supreme Court recently clarified that state officers are not immune from suits seeking prospective relief for official acts that allegedly violate the state constitution. *See Lathrop v. Deal*, No. S17A0196, 2017 WL 2625463, at *18–21 (Ga. June 19, 2017). Although Sexton does seek an injunction ordering the GDC to allow her to visit her son, it does not appear that she seeks any prospective relief from Smith individually.

immunity).    Thus, Smith is entitled to official immunity as to Sexton's GTCA and state-law constitutional claims.   Accordingly, Defendants' motion for judgment on the pleadings is granted as to these claims.

### C.   State-law Contract Claim

Sexton also alleges that Smith breached her employment contract with the GDC by violating the prison's rules and procedures and that she has a claim for that breach as a third-party beneficiary of that contract.   She seeks specific performance of the contract's conditions calling for Smith's termination and other punitive measures.   The GDC argues that this claim is moot because the receipt of service attached to Sexton's complaint states that Smith no longer works at the prison.  *See* Compl. Ex. B., Sheriff's Entry of Service on Shelay Smith, *ECF No. 1-1 at 46-47.*   But construing Sexton's allegations in her favor, the Court finds that for purposes of the present motion that the Court must assume that Smith is an employee of the GDC.   Thus, the Court finds that this claim is not moot at this time.

The Court does find, however, that Sexton fails to state a plausible claim for breach of contract.   "The mere fact that a member of the public would have benefited from the performance [of a contract] does not create third party intended beneficiary status under Georgia law." *Miree v. United States*, 249 S.E.2d

18

573, 580 (Ga. 1978). Instead, "it must clearly appear from the contract that it was intended for [their] benefit." *Id.* at 579 (quoting *Backus v. Chilivis*, 224 S.E.2d 370, 372 (Ga. 1976)). In *Miree*, the Georgia Supreme Court held that even language in the contract that specifies that the agreement is "for the use and benefit of the public" is insufficient to confer standing to enforce the contract on a nonparty. *Id.* 575, 579-80. It reasoned, "Practically every contract entered into by a county is for some public benefit because the only business of the county is public business." *Id.* at 579. The same reasoning applies here. If the contract says nothing more than that the agreement is to benefit the general public or even citizens of Georgia, then Sexton's claim fails because every contract entered by the GDC, as a state agency, is supposed to benefit the citizens of Georgia in some way. Here, Sexton alleges nothing more than she is entitled to enforce the contract due to her status as a citizen of the State of Georgia and the GDC's status as a state agency "existing for the 'public good.'" Compl. ¶ 25. Thus, her allegations are "merely consistent with" her claimed status as an intended third-party beneficiary of the agreement. *See Twombly*, 550 U.S. at 557. Without alleging that the GDC's employment contract with Smith expressly confers upon her, or a class of which she is a member, third-party beneficiary status, however, she fails to nudge her breach of

contract claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Accordingly, Defendants' motion for judgment on the pleadings is granted as to this claim.

## II.  Claims Against the GDC

Sexton also brings claims against the GDC pursuant to the GTCA and the Open Records Act.[4]  The Court finds that Sexton has not stated a plausible Open Records Act claim and that the GDC is entitled to sovereign immunity as to Sexton's other claims.

### A.  Georgia Tort Claims Act Claims

The GDC is entitled to sovereign immunity as to Sexton's GTCA claims.  "Simply put, the constitutional doctrine of sovereign immunity forbids [Georgia's] courts to entertain a lawsuit against the State without its consent."  *Lathrop v. Deal*, No. S17A0196, 2017 WL 2625463, at *1 (Ga. June 19, 2017). Only Georgia's General Assembly can waive the State's immunity from suit, Ga. Const., art. I, § 2, para. IX(e), and it has done so for "the torts of state officers and employees while acting within the scope of their official duties or employment," O.C.G.A. § 50-21-23(a).  However, this waiver is not unlimited. The GTCA provides that the State retains its sovereign immunity

---

[4]  The Court does not understand Sexton's complaint to assert any federal claims against the GDC.  *See supra* note 1.  But if it did, those claims would fail as a matter of law.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that a state or state agency is not suable pursuant to 42 U.S.C. § 1983).

for losses resulting from "[a]ssault, battery, false imprisonment, false arrest, [or] malicious prosecution," among other intentional torts. O.C.G.A. § 50-21-24(7). When determining whether the exception in § 50-21-24(7) applies, "[t]he focus . . . is not on the duty allegedly breached by the State but on the act causing the underlying loss regardless of who committed the act." *Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd.*, 545 S.E.2d 875, 878 (Ga. 2001). That exception applies here.

Sexton claims that the GDC negligently trained Smith and that Smith negligently performed her ministerial duties. But Sexton also alleges that Smith harassed, accosted, attacked, and unlawfully detained her during her visit at the prison and made false allegations in order to have her charged with crimes. Compl. ¶¶ 16, 31–32, 34; *accord* Compl. Ex. B, Letter from Alex Johnson to the GDC (July 19, 2016), ECF No. 1-1 at 28 (asserting that Sexton was intimidated, assaulted, injured, arrested, and prosecuted without cause). The GDC is thus entitled to sovereign immunity because Sexton alleges that her losses resulted from acts constituting the torts listed in § 50-21-24(7). This remains true even though Sexton also alleges that the GDC negligently trained Smith and that Smith was exercising a ministerial function when she committed the acts that harmed Sexton. *See Youngblood*, 545 S.E.2d at 877–78 (holding that the

State enjoys sovereign immunity even though assault and battery was caused by employee's negligent performance of a ministerial duty).  Accordingly, the Court grants Defendants' motion for judgment on the pleadings as to Sexton's GTCA claims against the GDC.

> B.   Open Records Act Claim

The General Assembly has waived the GDC's sovereign immunity from suits to enforce the provisions of the Open Records Act.  *See* O.C.G.A. § 50-18-73(a) (granting state courts jurisdiction over actions to enforce the ORA against state agencies); O.C.G.A. § 50-18-70(b)(1) (defining "[a]gency" by reference to § 50-14-1 as "[e]very state department, agency, board, bureau, office, commission, public corporation, and authority"); O.C.G.A. §§ 42-2-1 & 42-2-4 (creating the Department of Corrections).  The ORA provides, "All public records shall be open for personal inspection and copying, except those which by order of a court . . . or by law are specifically exempted from disclosure."  O.C.G.A. § 50-18-71(a). For purposes of the pending motion, the Court assumes that the video footage Sexton seeks is a "public record" subject to the ORA.

The GDC contends, however, that the video Sexton seeks is exempt because it is either (1) a "document relating to the existence, nature, location, or function of security devices

designed to protect against terrorist or other attacks that depend for their effectiveness in whole or in part upon a lack of general public knowledge"; or (2) a "plan, blueprint, or other material which if made public could compromise security against sabotage, criminal, or terroristic acts." O.C.G.A. § 50-18-72(a)(25)(A)(iii & iv). Although these exemptions are not a model of clarity, the Court is persuaded that they apply here. A finding to the contrary would expose any surveillance video footage at any Georgia prison to the eyes of any member of the general public simply upon a request under the ORA. The Court finds that the Georgia General Assembly did not intend for such information that could compromise prison security to be so easily available. These exemptions remove such materials from the ORA.[5] The GDC motion for judgment on the pleadings is granted as to Sexton's ORA claim.

CONCLUSION

The Court grants in part and denies in part Defendants' motion for judgment on the pleadings (ECF No. 4) as follows. Defendants' motion is granted as to all of Sexton's claims against the GDC and the John Doe Defendants. Defendants' motion is also granted as to Sexton's § 1983 claims under the Fourth Amendment for malicious prosecution and under the Fourteenth

---

[5] The Court observes that this does not mean that these materials are never available. They may, as Defendants appear to concede, be discoverable during litigation, and a court could certainly order their production.

Amendment for deliberate indifference to her medical needs. Additionally, Sexton concedes that her § 1985 and § 1986 claims should be dismissed.

Defendants' motion is denied as to Sexton's § 1983 claims against Smith in her individual capacity for false arrest and excessive force in violation of the Fourth Amendment and for retaliation in violation of the First Amendment.

The previously entered stay of discovery and scheduling deadlines is vacated. The parties shall submit a jointly proposed amended scheduling order to the Court within 14 days of today's order. The Court also observes that if fact discovery does not eliminate the genuine disputes that the Court has found are created by the allegations in the Plaintiff's complaint, then Defendant should seriously consider whether the filing of a motion for summary judgment would be frivolous. Such a motion should not be filed simply to ask the Court to reconsider the rulings it has made in today's order.

IT IS SO ORDERED, this 17th day of July, 2017.

S/Clay D. Land

CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA