IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| DONNA SEXTON, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 4:17-CV-45 (CDL) |
| GEORGIA DEPARTMENT OF CORRECTIONS and SHELAY SMITH, | * | |
| | * | |
| Defendants. | * | |
| | * | |

O R D E R

This action arises from Plaintiff's visit with her son, who was an inmate at Rutledge State Prison (the "Prison"). During the visit, a correctional officer had an altercation with Plaintiff while attempting to enforce the Prison's rules. Plaintiff asserts claims against that correctional officer in the officer's individual capacity under 42 U.S.C. § 1983 for violations of her First and Fourth Amendment constitutional rights. The officer has filed a motion for summary judgment, asserting qualified immunity. Because Plaintiff failed to establish that the correctional officer violated her clearly established rights, the officer is entitled to qualified immunity, and her motion for summary judgment (ECF No. 18) is accordingly granted. All of Plaintiff's other claims were dismissed previously when the Court granted Defendants' motion

for judgment on the pleadings. Order Granting Mot. J. Pleadings 23-24, ECF No. 10.

FACTUAL BACKGROUND

At the summary judgment stage, the Court must view the record in the light most favorable to the plaintiff and draw all reasonable factual inferences in her favor when deciding whether a government official is entitled to qualified immunity. *Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016). Therefore, the record considered by the Court is limited to the undisputed facts and the plaintiff's version of the disputed facts. *Id.* That record establishes the following:

To address a problem with contraband entering the Prison, the warden implemented new procedures in August 2015 to prevent visitors from passing contraband to inmates. Under the new procedures, visitors were required to empty food purchased from vending machines in the visitation room onto disposable plates and to throw away the wrappers so that correctional officers could better observe what was passed between inmates and visitors.

Based on reports from informants and his staff, Deputy Warden of Security Darryl Warren believed that inmate Markus Funck was a source of the Prison's contraband problem. He also believed that Funck was expecting a delivery of contraband during the visitation period scheduled for April 22, 2015.

2

Warren Decl. ¶¶ 11 & 12, ECF No. 18-4.[1]  Accordingly, Warren informed Defendant Shelay Smith, the correctional officer monitoring the visitation room that day, to keep a close eye on Funck and his visitors.

Plaintiff arrived at the Prison on April 22 to visit Funck, her son.  When Plaintiff entered the visitation room, Smith learned that Plaintiff was visiting Funck and instructed Plaintiff to sit at a table in front of her.  Compl. Ex. B, GDC Incident Report-D. Sexton Statement Under Oath, ECF No. 1-1 at 32, 33.[2]  While waiting for her son, Plaintiff went to the vending machines, purchased some packages of food, and returned to the table in front of Smith.  *Id.*  Another visitor told Plaintiff that a new rule required Plaintiff to open the bags of food and put the items on a plate.  *Id.*  Plaintiff said aloud, "[O]kay—would have been nice to have been told that."  *Id.*  Smith responded, "I would have gotten around to it."  *Id.*  Plaintiff then opened one bag of food, and Smith told her to open the other bag as well.  *Id.*  When Plaintiff asked whether

---

[1] Warren's statements about the reports he received from informants and his staff are not offered for the truth of the matter asserted in them and, thus, are not hearsay.  *See* Fed. R. Evid. 801(c)(2).  Therefore, Plaintiff's hearsay objections are overruled.

[2] Smith's objections to Plaintiff's statements in the Incident Report are overruled because Plaintiff could testify to the same facts at trial.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.").

3

she could wait to open it until Funck arrived, Smith directed her to go ahead and open the bag. *Id.* Officers eventually brought Funck to the visitation room.

Cameras in the visitation room captured the events that unfolded next on video. *See generally* Def.'s Notice of Physical Filing, Prison Video (Aug. 22, 2015), ECF No. 19 [hereinafter Prison Video]. The video shows Smith sitting behind a table in the back of the visitation room such that she could see the inmates and visitors in front of her. *Id.* Plaintiff and Funck sat at one of the tables directly in front of Smith. *Id.* Plaintiff twice left the table to purchase more food from the vending machines. *Id.* at 10:26:45–10:27:21, 10:27:30–10:28:21; *see also* GDC Incident Report-Addition to D. Sexton Statement Under Oath, ECF No. 1-1 at 35 [hereinafter D. Sexton Suppl. Statement]; Smith Decl. ¶ 10, ECF No. 18-3. Apparently, Plaintiff brought the food back from the vending machine without opening the packages, emptying the food onto the plate she was using, or discarding the wrappers. *See* Smith Decl. ¶ 10 (stating that Plaintiff did not put the contents of the food packages on a plate). Some wrappers fell onto the floor, and when Funck picked them up and gave them to Plaintiff, Smith approached their table and told Plaintiff to throw away the wrappers immediately. Smith then returned to her desk while Plaintiff threw away the wrappers. D. Sexton Suppl. Statement;

Prison Video 10:28:57–10:29:34. Seeing other visitors were similarly in violation of the rules, Plaintiff "said something to [Smith] about it" on her way back from the trash can. D. Sexton Suppl. Statement.[3]

Moments later, Smith approached Plaintiff and Funck and terminated their visit. *Id.* Protesting, Plaintiff stated, "I['m] not leaving." *Id.*; *see also* Smith Decl. ¶ 14 (stating that Plaintiff refused to leave). The video shows Plaintiff gesturing to the other tables in the visitation room and repeatedly pointing her fingers at Smith, who is hidden from the camera by a column. Prison Video 10:30:49–10:31:12. Smith then escorted Funck to another room. Smith Decl. ¶ 13. As Smith closed the door behind Funck, Plaintiff got up from the table, tossed a plate of food in Smith's direction, and quickly walked towards the exit. Prison Video 10:31:23–10:31:28; D. Sexton Suppl. Statement; Smith Decl. ¶ 16.[4] Smith followed Plaintiff, and Plaintiff turned towards Smith and raised her right hand in the air as Smith approached her from behind. Prison Video

---

[3] The video footage lacks audio, but Plaintiff contends, so the Court assumes, that this is when Plaintiff made the comment to Smith.

[4] Plaintiff disputes Smith's claims that Plaintiff threw the plate at Smith and that peanuts struck Smith in the face, but Plaintiff concedes that she threw the plate "like a Frisbee to the side of" Smith. Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 21, ECF No. 21-1. The video footage does not "clearly depict[]" which account is true, so the Court accepts Plaintiff's version. *Cf. Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018). Whether Plaintiff threw the plate at Smith or threw it beside Smith, it is undisputed that Plaintiff threw the plate *in Smith's direction*.

5

10:31:26-10:31:28.[5]  Smith then grabbed Plaintiff's arms and pushed her against a nearby wall.  *Id.* at 10:31:28-10:31:30.  Another correctional officer assisted Smith.  Smith Decl. ¶ 21.

Although the video footage shows the struggle against the wall in the visitation room, it does not clearly depict everything that happened.  Plaintiff contends that Smith pushed her to the ground, placed a boot and hand on her, scratched her, and hit her in the face.  D. Sexton Suppl. Statement.  Smith contends that Plaintiff dropped to the floor and began to scream and to slap and kick Smith.  Smith Decl. ¶ 20.  Smith also disputes striking Plaintiff.  *Id.* ¶ 24.  Although courts are permitted to accept facts that are "clearly depicted" by a video recording, courts must accept the plaintiff's version as true when the video is unclear and there is conflicting evidence on the issue.  *Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018).  The Court thus assumes for purposes of this motion that Plaintiff's version of these facts is true.

As the struggle ensued, Funck re-entered the visitation room and approached Smith from behind.  The other correctional officer then turned around and removed Funck from the area.  Smith Decl. ¶¶ 22 & 23.  Shortly thereafter, Plaintiff and Smith exited the visitation room.  The video shows that the encounter

---

[5] It is unclear from the video footage whether Plaintiff raised a fist, as Smith claims, Smith Decl. ¶ 17, or just her hand.  Plaintiff disputes that she raised her fist, so the Court assumes that Plaintiff raised her hand.  *Cf. Shaw*, 884 F.3d at 1097 n.1.

6

between Plaintiff and Smith lasted approximately one and a half minutes from when Smith grabbed Plaintiff until they exited the visitation room. Prison Video 10:31:28–10:33:02. Plaintiff was allowed to leave the Prison. Smith notified law enforcement of the incident and later swore out an arrest warrant for Plaintiff for committing simple battery. Smith Decl. ¶ 30. Plaintiff then brought this action.

## DISCUSSION

Plaintiff asserts the following § 1983 claims against Smith: (1) false arrest under the Fourth Amendment based on Smith seizing Plaintiff; (2) excessive force under the Fourth Amendment based on the manner in which Smith seized Plaintiff; and (3) retaliation under the First Amendment based on Smith terminating Plaintiff's visit and seizing Plaintiff after Plaintiff commented to Smith about the Prison's procedures. Smith contends that she is entitled to qualified immunity.

### I. Qualified Immunity

Qualified immunity protects government officials engaged in discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to

7

hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity does *not* protect an officer who knew or reasonably should have known that her actions would violate the plaintiff's constitutional rights. *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016).

Plaintiff does not dispute that Smith was engaged in a discretionary function when the challenged conduct occurred. Therefore, Plaintiff must demonstrate that qualified immunity is not appropriate by showing that the facts viewed in the light most favorable to her establish that Smith violated a constitutional right that was clearly established when Smith acted. *See, e.g.*, *Perez*, 809 F.3d at 1218 (explaining two-part qualified immunity inquiry). All material fact disputes must be resolved in Plaintiff's favor; her evidence must be believed so that her "best case" is before the Court. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313-14 (11th Cir. 2017) (quoting *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008)).

**II. Fourth Amendment Claims**

    A.   <u>False Arrest</u>

A law enforcement officer violates the Fourth Amendment if she makes an arrest without probable cause. Conversely, the existence of probable cause at the time of an arrest is an absolute bar to a Fourth Amendment claim for false arrest. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).[6] Whether probable cause exists is an objective test that looks to the "totality of the circumstances" to determine whether "the facts and circumstances within the officer's knowledge, of which [the officer] has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). The precise issue for the Court to decide today in the qualified immunity context is not whether Smith had probable cause, but whether she had *arguable* probable cause to seize Plaintiff for any offense. If Smith did, then she is entitled to qualified immunity. *Id.* at 1232; *Brown v. City of Huntsville*, 608 F.3d 724, 734-35 (11th Cir. 2010). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing

---

[6] Smith concedes that the lawfulness of Plaintiff's seizure depends on probable cause even though she also submits that she did not "arrest" Plaintiff.

the same knowledge" as the arresting officer "could have believed that probable cause existed to arrest." *Kingsland*, 382 F.3d at 1232 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). The existence of probable cause or arguable probable cause depends on the elements of the alleged crime and the operative facts. *Brown*, 608 F.3d at 735. Smith contends that she had arguable probable cause to believe Plaintiff committed simple assault. The Court agrees.

Under Georgia law, a person commits simple assault if she "commits an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20(a)(2). A simple assault "is complete if there is a demonstration of violence, coupled with an apparent present ability to inflict injury so as to cause the person against whom it is directed reasonably to fear that [she] will receive an immediate violent injury unless [she] retreats to secure [her] safety." *Daniels v. State*, 681 S.E.2d 642, 644 (Ga. Ct. App. 2009) (quoting *In re D.B.*, 644 S.E.2d 305, 307 (Ga. Ct. App. 2007)). In *Abercrombie v. Beam*, No. 17-13930, 2018 WL 1341535 (11th Cir. 2018) (per curiam), a panel of the Eleventh Circuit agreed with a district court's finding that "angrily throwing [a paper] invoice in someone's face could potentially constitute a 'demonstration of violence'" for purposes of simple assault under Georgia law. *Id.* at *4 (quoting Order Den. Mot. J.

10

Pleadings 13, *Abercrombie v. Beam*, No. 1:15-CV-4452 (N.D. Ga. June 9, 2016), ECF No. 15); *see also Trzepacz v. State*, 523 S.E.2d 599, 599 (Ga. Ct. App. 1999) (affirming conviction for simple assault where the defendant angrily threw a wooden board at the victim, causing the victim to step back in order to avoid being hit); *In re T.Y.B.*, 654 S.E.2d 688, 689–90 (Ga. Ct. App. 2007) (affirming conviction for simple assault where the defendant angrily cursed and screamed at his mother, took a pot of boiling water off of the stove, and stood a short distance from her while staring at her). The panel opinion in *Abercrombie* is persuasive here.[7]

A reasonable officer in Smith's position could have believed that Plaintiff demonstrated violence by throwing the plate in the officer's direction and turning towards the officer and raising her hand. A reasonable officer could have believed that these acts were overt attempts or threats to strike the officer with the plate or with Plaintiff's hand.[8] Likewise, the

---

[7] In the end, the *Abercrombie* panel reversed the district court's finding of qualified immunity even though the panel agreed that throwing paper invoices in someone's face would provide arguable probable cause to arrest for simple assault. The panel found a jury question existed on whether the officer had reasonably trustworthy information that the suspect actually threw the invoices. *Abercrombie*, 2018 WL 1341535, at *5. Here, Smith had personal knowledge of Plaintiff's conduct.

[8] This is true even if Smith was not facing Plaintiff when she threw the plate in Smith's direction. If Smith did not see Plaintiff throw the plate, she still could have reasonably concluded that Plaintiff was the one who threw the plate because Plaintiff had a motive to throw the plate, the plate landed on the ground near Smith, Plaintiff

11

proximity between Smith and Plaintiff during the encounter "could likewise convey 'an apparent and present ability to inflict injury'" for purposes of simple assault in Georgia. *Abercrombie*, 2018 WL 1341535, at *4 (quoting Order Den. Mot. J. Pleadings 13, *Abercrombie*, No. 1:15-CV-4452, ECF No. 15); *see id.* (finding proximity necessary for person to throw invoices in another's face could convey apparent and present ability to inflict injury). Because Smith had at least arguable probable cause to seize Plaintiff for simple assault, Smith is entitled to qualified immunity on Plaintiff's false arrest claim.[9]

B. Excessive Force

The Fourth Amendment prohibits officers from using excessive, *i.e.* unreasonable, force in the course of a seizure. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In evaluating whether an officer's use of force was unreasonable, courts must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers

---

was the only person physically situated to throw the plate in Smith's direction, and Smith saw Plaintiff quickly walking away from the scene. Under these facts, a reasonable officer in Smith's position could have believed that someone threw the plate at the officer and that Plaintiff was the culprit.

[9] Plaintiff argues that the fact that she raised her hand towards Smith cannot be considered in the probable cause analysis because she was justified in resisting an unlawful seizure. This argument is without merit. Throwing the plate in Smith's direction very likely gave Smith *actual* probable cause to seize Plaintiff for simple assault, so Plaintiff likely had no right to resist the seizure. Moreover, Smith most certainly had arguable probable cause to seize Plaintiff based on the plate alone and, therefore, is entitled to qualified immunity without considering Plaintiff's alleged efforts to resist.

or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Courts must also consider "the fact that [law enforcement] officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. In cases involving the use of force within jails, courts must also give some deference to prison administrators' concerns about institutional security. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also United States v. Prevo*, 435 F.3d 1343, 1347 (11th Cir. 2006) (analyzing warrantless searches of vehicles in the visitors parking lot of a correctional facility in light of need for institutional security). Moreover, even if Smith's use of force was unreasonable, Smith is still entitled to qualified immunity unless no reasonable officer under the same circumstances could have believed that Smith's use of force was reasonable. *Stephens*, 852 F.3d at 1326-27.

Viewed in the light most favorable to Plaintiff, the facts show that Plaintiff, while in a room at the Prison with at least seven other inmates and their visitors, threw a plate in Smith's direction and hurriedly moved towards the exit. As Smith approached Plaintiff from behind, Plaintiff turned towards Smith

and raised her hand. At that time, Smith grabbed Plaintiff's arms, pushed her onto a nearby wall and onto the ground. Smith then placed her hands and boot on Plaintiff, scratched Plaintiff, and hit Plaintiff in the face. Plaintiff claims she was injured but pointed to no evidence—testimony, affidavits, or otherwise—of those injuries.

Considering the *Graham* factors, the Court doubts that Smith's use of force was unreasonable. First, Plaintiff committed acts that likely constitute simple assault, which is an attempted battery under Georgia law. Not only would the nature of this offense give officers a reasonable belief that some use of force in seizing Plaintiff was necessary, but the manner in which Plaintiff committed it would as well. Plaintiff demonstrated a willingness to use force against correctional officers by throwing the plate in Smith's direction and by turning towards Smith and raising her hand. For the same reasons, officers could have reasonably believed that Plaintiff posed a risk to the safety of Smith and to other correctional officers. Though Plaintiff did not forcefully resist the seizure, her statement in the Incident Report reveals that she was screaming and yelling for Smith to get off of her. D. Sexton Suppl. Statement. And Plaintiff put forth no evidence that she suffered any significant physical injuries. A reasonable officer could believe that grabbing Plaintiff, moving

14

her to a nearby wall, shoving her to the ground, placing their hands and boot on Plaintiff, and scratching her and hitting her in the course of the seizure was necessary to subdue Plaintiff, who was verbally resisting and would not submit. Thus, the *Graham* factors support the conclusion that Smith's use of force was not unreasonable.

Institutional concerns also suggest that Smith's use of force was not unreasonable. Smith and the other correctional officer were outnumbered by visitors and unrestrained inmates during the encounter. A prolonged confrontation with one visitor distracts the officers from monitoring the rest of the visitation room. In such circumstances, inmates and their visitors have a greater ability to pass contraband between one another. And inmates have a greater ability to attack the officers, the visitors, or each other. Indeed, Funck approached Smith from behind and tried to interfere with Smith's seizure of Plaintiff. Reasonable correctional officers could believe that quickly and forcefully quelling the disturbance was necessary so that they could continue effectively monitoring the security of the Prison and the safety of its occupants.

Even assuming, however, that Smith's use of force was unreasonable, Plaintiff failed to establish that what Smith did under Plaintiff's version of the facts violated her clearly established rights. Plaintiff cited no similar cases, and this

15

is certainly not a case of obvious clarity. Because a reasonable correctional officer under these circumstances could believe that Smith's use of force was not excessive, Smith is entitled to qualified immunity on Plaintiff's excessive force claim.

**III. First Amendment Claim**

Plaintiff contends that Smith violated her First Amendment rights by terminating Plaintiff's visit with Funck in retaliation for Plaintiff's comment to Smith about the Prison's procedures.[10] To establish a prima facie case of retaliation, Plaintiff must show: (1) she engaged in constitutionally protected speech; (2) Smith's allegedly retaliatory actions would likely deter a person of ordinary firmness from engaging in such speech; and (3) a causal relationship between Smith's retaliatory actions and the protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). For purpose of qualified immunity, the question is whether correctional officers in Smith's position could have reasonably believed that Smith's actions would not violate Plaintiff's First Amendment rights.

---

[10] Plaintiff also claims that Smith seized her in retaliation for protected speech. Because the Court finds that Smith had arguable probable cause to seize Plaintiff for simple assault, Smith is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim arising out of that seizure as well. *See Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) ("[W]hen an officer has arguable probable cause to arrest, [she] is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest.").

16

*See Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1199 (11th Cir. 2011).

First, it is not clear that a reasonable correctional officer in Smith's position would have known that Plaintiff's comment was protected speech. Generally, it is well established that the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." *See Skop v. City of Atlanta*, 485 F.3d 1130, 1139 (11th Cir. 2007) (quoting *Houston v. Hill*, 482 U.S. 451, 461–63 (1987)). But it is also clear that prison administrators are "accorded latitude in the administration of prison affairs" that includes the ability, at least as it relates to inmates, to restrict speech that may otherwise be protected. *See Mosley*, 532 F.3d at 1277 (quoting *Cruz v. Beto*, 405 U.S. 319, 321 (1972)). And Plaintiff identified no authority clearly establishing that a prison visitor's First Amendment rights are coextensive with those of a citizen making the same remarks on the street. A prison certainly has the right to adopt rules to maintain order while a visitor is on prison grounds even if those rules may have some impact on the visitor's speech.

Second, even if Smith should have known that Plaintiff's comments constituted protected speech, that does not end the qualified immunity inquiry. When "the facts assumed for summary judgment purposes . . . show mixed motives (lawful *and* unlawful

17

motivations) and pre-existing law does not dictate that the merits of the case must be decided in [the] plaintiff's favor, the defendant is entitled to [qualified] immunity." *Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996). In this case, the indisputable evidence shows that Plaintiff violated the Prison's procedures and, therefore, that Smith had a lawful reason to terminate Plaintiff's visit. Smith contends that she was motivated by her intent to maintain order and security within the Prison, Smith Decl. ¶ 26, and Plaintiff pointed to no evidence suggesting otherwise. Even assuming Smith might have been partially motivated by Plaintiff's comment, Plaintiff pointed to no cases clearly establishing that Smith would violate Plaintiff's First Amendment rights by terminating the visit given that Smith was also motivated by a clearly legitimate reason. *See Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1379 (11th Cir. 1997) (reversing denial of qualified immunity on First Amendment claim where, assuming the defendant officials had a retaliatory motive when they demoted the plaintiff, officials' putative reason for demoting plaintiff was supported by indisputable evidence and it was not clearly established that the officials should not have demoted the plaintiff under those circumstances). Therefore, Smith is entitled to qualified immunity on Plaintiff's retaliation claim.

CONCLUSION

Because Plaintiff failed to demonstrate, under her version of the facts, that Smith violated Plaintiff's clearly established First or Fourth Amendment rights, Smith is entitled qualified immunity. Therefore, Smith's motion for summary judgment (ECF No. 18) is granted.

IT IS SO ORDERED, this 16th day of April, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
